Houston, J.
Metropolitan Property and Liability Insurance Company (Metropolitan) brings this action pursuant to M.G.L.c. 231AandMass.R.Civ.P. 57 seeking declaratory judgment that the terms of the homeowners policy: (1) excludes coverage for damages claimed by Lumber Mutual Insurance Company,[2] (Lumber); (2) do not require Metropolitan to provide, at its own expense, attorneys to defend Jeffrey Spencer in Civil Action No. 89-4521; and (3) limit the coverage available to Jeffrey Spencer for property damage to $500.00. In response, the Spencers and Lumber contend that Metropolitan is required, under the policy terms, to defend Jeffrey Spencer at its own expense. They further contend that the terms of the homeowners’ policy do not exclude coverage for damages claimed by Lumber and that the limit of coverage available to Jeffrey for property damage is not $500, but rather $500,000. For the reasons set forth below, the court ORDERS that judgment enter for the defendants.
BACKGROUND
After consideration of the attested to written materials, the court considers the following facts relevant:
On July 10, 1986, a fire broke out while Jeffrey Spencer was stripping paint from the exterior of 105 Main Street in Acton, Massachusetts (105 Main Street). At the time of the fire, the Spencers owned and resided at 95 Main Street in Acton, Massachusetts (95 Main Street). Prudence Spencer was the sole owner of 105 Main Street.
The Spencers purchased homeowners insurance from Metropolitan for both 95 Main Street and 105 Main Street. Under this policy, the Spencers were the named insureds and Jeffrey was an unnamed insured. Prudence Spencer also purchased insurance coverage for the 105 Main Street property from Lumber.
At the time of the incident, Jeffrey Spencer was a full-time engineering student at UMass-Amherst and resided with his parents at 95 Main Street. Mrs. Spencer paid him $3000 to strip and paint the 105 Main Street property. In addition, the Spencers furnished Jeffrey with the Wagner Spray Tech Power *117 Stripper he used to strip the paint from the exterior of 105 Main Street.
Lumber paid property damage benefits to Mrs. Spencer, then instituted a negligence suit against Jeffrey Spencer and Wagner Spray Tech.[3] Jeffrey Spencer requested that Metropolitan defend and indemnify him in that suit. Metropolitan contends that it owes no defense or indemnify to him. It has filed this declaratory judgment action to determine its obligations under the policy.
DISCUSSION
Metropolitan argues that several exclusions apply to Jeffrey Spencer, thereby precluding it from providing coverage for damages claimed by Lumber under the terms of the homeowners policy. The relevant portions of the Metropolitan policy are:
Section II — Exclusions Applicable to Section II
UNDER COVERAGES F AND G, WE DO NOT COVER BODILY INJURY OR PROPERTY DAMAGE
3. arising out of the rendering or falling to render professional services of any kind
4. arising out of your business pursuits . . .
5. arising out of the use of any premises owned, rented or controlled by you . . . (p. 25)
UNDER COVERAGE F, WE DO NOT COVER:
3. property damage to property owned by you.
4. property damage to property occupied or used by you, rented to you, in your care, or over which you have physical control (pp. 25-26). CONDITIONS APPLICABLE TO SECTION II: . . .
Severability Clause
Subject to the limits of liability, this insurance applies separately to each covered person or organization against whom claim is made or suit is brought (p. 29).
(Emphasis added.)
In Worcester Mutual Insurance Company v. Marnell, the Marnells sought coverage from Worcester Mutual under their homeowners policy when Alioto filed a negligence suit against them for failing to supervise a party they allowed their son, Michael, to have in their home. 398 Mass. 240 (1986). Alioto claimed that Michael, while driving guests home in an intoxicated state, struck and killed Robert Alioto.
Worcester Mutual sought declaratory judgment that it was not required to defend and indemnify the Marnells based on a motor vehicle exclusion in the policy. That provision provided, in relevant part: “[liability coverages] do not apply to bodily injury or property damage: . . . e. arising out of the ownership, maintenance, use, loading or unloading of: . . . (2) a motor vehicle owned or operated by or rented or loaned to any insured .. .” Id. at 242. The policy also included a severability of insurance clause stating that “]t]his insurance applies separately to each insured ...” Id. (emphasis added). Worcester Mutual argued that the existence of the severability of insurance clause did not affect the applicability of the motor vehicle exclusion. Thus, it argued, the exclusion was applicable to the Marnells, and not just Michael, because it became operative when injuries arose out of the “use ... of. .. a motor vehicle owned or operated by . . . any insured . . .” Id.
However, the court held that the severability clause required each insured to be treated as having a separate insurance policy, so that the term “insured” or “you" stated in any exclusion refers only to the person claiming coverage under the policy. Id. at 245. Since neither Richard nor Ellen Marnell owned or operated the motor vehicle that struck and killed Robert Alioto, the motor vehicle exclusion was inapplicable to them and did not preclude them from obtaining coverage from Worcester Mutual. Id. at 244-45. The court further stated that this interpretation gave reasonable meaning to both the motor vehicle exclusion and the severability clause:
Under our construction of the policy, the motor vehicle exclusion prevents the homeowners policy from providing additional insurance, without a premium, to an insured when a motor vehicle owned or operated by that person is involved in an accident causing bodily injuries or property damage. At the same time, the purpose of the severabilily of insurance clause is served because coverage is extended to insureds who neither owned nor operated the motor vehicle involved in the accident.
Id. at 245.
Here, as in Worcester Mutual, the severability clause also provides that the policy “applies separately to each covered person.” Thus, Jeffrey Spencer is treated as having a separate insurance policy. Worcester Mutual, supra. Hence, the term “insured” as used in each of the policy exclusions refers only to Jeffrey Spencer. Id. Any exclusion based on conduct of or ownership by the Spencers does not apply to Jeffrey’s rights under the policy. Id.
The facts contradict Metropolitan’s contention that Jeffrey was engaged in “business pursuits” and/or “rendering professional service[s]” when his parents paid him to strip and paint the premises at 105 Main Street. Jeffrey was a full-time engineering student at UMass-Amherst on summer vacation at the time of the fire. While he did paint during his summer vacations, the facts do not indicate that he possessed any qualifications or specialized training to do so. Furthermore, Metropolitan’s argument is undermined by the fact that Jeffrey’s parents furnished him with the equipment he used to strip the house at 105 Main Street. Thus, this court finds that Jeffrey was not engaged in a “business pursuit” or “rendering professional services” under the terms of the Metropolitan homeowners’ insurance policy.
*118 Metropolitan further contends that Jeffrey Spencer is also subject to the following exclusions as well:
5. arising out of the use of any premises owned, rented, or controlled by you . . .
3. property damage to property owned by you
4. property damage to property occupied or used by you, rented to you, in your care, or over which you have physical control . . .
(Pp. 25-26.)
These exclusions are also inapplicable to Jeffrey. Jeffrey Spencer neither owned, occupied, used, rented, nor rented out the premises at 105 Main Street. The facts do not indicate that he did anything else except strip and paint the premises for his parents. This court would be hard pressed to find that Jeffrey exercised physical control over 105 Main Street or that the property was in his care.[4]
Finally, Metropolitan contends that the limit of coverage available to Jeffrey Spencer for property damage is $500. It cites the following provision in its policy to support this contention.
Section II, Coverage G
ADDITIONAL BENEFITS WE WILL PROVIDE
Damage to Property of Others
We will pay up to $500.00 each time you cause property damage to someone else’s property . . . we will not pay this ADDITIONAL BENEFIT. . .
(Emphasis added.)
However, the language of the policy clearly states that this provision is an additional benefit, not the benefit limit itself. The applicable limits for Coverage F — Personal Liability, as stated in the Declarations, is $500,000. Thus, the limit of personal liability coverage available to Jeffrey Spencer is $500,000, not $500. The interpretation advanced by Metropolitan is implausible given the clear language of the policy. “An interpretation which gives a reasonable meaning to all the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable.” Worcester Mutual, supra, quoting Sherman v. Employer’s Liability Assurance Corp., 343 Mass. 354, 357 (1961).
ORDER
For the foregoing reasons, this court ORDERS that judgment enter for the defendants and intervenor. It is hereby ORDERED, ADJUDGED and DECLARED that:
(1) Metropolitan is required to defend and indemnify Jeffrey Spencer in Civil Action No. 89-4251;
(2) The terms of the homeowners policy do not exclude coverage to Jeffrey Spencer in Civil Action No. 89-4251; and
(3) the limit of personal liabiliiy coverage available to Jeffrey Spencer for property damage is $500,000 under Coverage F.

In Civil Action No. 89-4251.

Lumber has settled its claims against Wagner Spray Tech.

Black’s Law Dictionary (5th Ed.) defines control as, “power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee.”